UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELYSIA J. WATKINS,

    Plaintiff,

v.                                                               Case No. 8:21-cv-2022-SDM-CPT

SHAWN FOX,

    Defendant.
_____/

**O R D E R**

Before the Court is pro se Plaintiff Elysia J. Watkins's *Amended [ ] Nunc Pro Tunc Request* (Doc. 89).[1] After careful review and for the reasons discussed below, Watkins's motion is denied.

I.

As set forth in detail in a prior Order of the Court, this action stems from the events surrounding Watkins's booking at the Pinellas County Jail in December 2018. *See* (Doc. 85). In her operative complaint, Watkins avers that Defendant Shawn Fox, then a Pinellas County Sheriff's Office (PSCO) deputy, used unlawful force against her during the intake process, including by "thr[owing her] onto a table counter,"

---

[1] Watkins previously filed a similar motion, which the Court denied due to her failure to engage in a good faith conferral with Fox's counsel. (Docs. 86, 88).

"shov[ing] her handcuffed hands and arms . . . up to the back of her neck," "lift[ing] [her] from the ground by her arm," and "ben[ding] her right hand all the way back, almost breaking her wrist." (Doc. 21 at 4). Watkins also alleges that an unnamed deputy—who Watkins has since identified as non-party PCSO deputy Brett Earling— tapped Fox on the shoulder during this encounter but that Fox nonetheless "continued with [his] attack" on Watkins. *Id.* at 4, 19; (Doc. 37 at 2).

In January 2019, Watkins's criminal defense attorney submitted a public records request to the PCSO seeking Watkins's medical records and her "intake video" at the "Sheriff['s] Office/Jail." (Doc. 74 at 1); (Doc. 74-3). In response, the public records processing unit identified six video clips as falling within the ambit of this request, produced four of them the same month, and withheld two as exempt under Florida's public records statute. (Doc. 74-1 at 3–4).

Also in January 2019, Watkins filed a complaint with PCSO Sheriff Bob Gualtieri, in which she recounted the alleged attack and averred that an unnamed deputy (i.e., Fox) "intentionally battered, assaulted and injured her." (Doc. 75-1 at 2). The PCSO's Professional Standards Bureau—also known as Internal Affairs— investigated Watkins's allegations, *id.* at 7, during which it gathered video recordings of her time at the jail and interviewed nine witnesses, including Watkins but not Earling. The PSCO official who spearheaded the Internal Affairs investigation, sergeant (and now lieutenant) Jessica Smith, later informed Watkins in writing that there was "insufficient reason . . . to bring about disciplinary action against the accused [PCSO] members." (Doc. 75-1 at 7).

2

Watkins eventually filed a lawsuit in state court against Fox and Gualtieri in December 2020. (Docs. 1, 1-3). Fox and Gualtieri removed the action to this Court in August 2021 after Watkins amended her complaint to add a section 1983 claim. (Doc. 1). In August 2022, the Court dismissed Gualtieri from the case because Watkins failed to allege the sheriff's participation in her injury or a basis for municipal liability. (Doc. 20).

Beginning in late January 2023, Watkins filed two motions seeking to compel the release of certain audio and video recordings related to the December 2018 booking incident, claiming in part that Fox's production of surveillance videos from her stint at the jail was incomplete and that the videos had been "manipulated." (Docs. 37, 52). Watkins also sought to compel Fox's disclosure of a purported interview of Earling performed by Internal Affairs. *Id.* The Court denied Watkins's requests after hearing oral argument on the matter. (Docs. 46, 51, 67).

In April 2023, Watkins filed a motion for sanctions, asserting that Fox spoliated both the interview of Earling and the audio and video footage from the jail surveillance cameras. (Doc. 53). In response, Fox represented that no interview of Earling had taken place and explained that the only audio or video footage from the jail in existence at the time Watkins filed suit was contained in the Internal Affairs file and turned over to her. (Doc. 55 at 4); (Doc. 73 at 24–25). Anything else, Fox insisted, had "long since been overwritten on the network." (Doc. 55 at 4). To buttress these representations, Fox submitted a sworn affidavit asserting that he did not have access or authority to edit, delete, or alter any of the recordings made by the jail's surveillance

3

equipment during his tenure at the PCSO; that he could not view jail surveillance video without a sergeant or a higher ranking deputy logging into the system; that video footage from the jail was retained for only ninety days; and that any recordings which had been preserved would be in the PCSO's possession, custody, or control. (Doc. 55-1).

The Court heard oral argument on Watkins's motion in May 2023. (Doc. 69). To clarify certain issues, including the completeness of Fox's audio and video production, the Court thereafter scheduled an evidentiary hearing on the motion for June 2023 and directed both sides to submit supplemental memoranda. (Doc. 78). In noticing this proceeding, the Court instructed Watkins to "be prepared to introduce evidence—including, but not limited to, her own testimony—that supports her position that any relevant video or audio was spoliated or manipulated." (Doc. 68).

At the June 2023 hearing, Fox called Smith as a witness and introduced several exhibits through her. These exhibits consisted of the video footage that had been disclosed to Watkins, a diagram of the intake area reflecting the location, orientation, and recording capabilities of more than a dozen cameras from which the videos were obtained, and a file directory of the recordings disclosed to Watkins. (Docs. 79-1, 79-2). Watkins cross-examined Smith but did not testify or offer any other evidence of her own. Several weeks after the evidentiary hearing, Watkins filed another supplemental memorandum without leave of the Court in an effort to bolster her sanctions motion. (Doc. 81).

In a seventeen-page decision issued in early September 2023, the Court denied Watkins's motion. (Doc. 85). In support of its decision, the Court noted, *inter alia*, that it reviewed the entirety of the video production and that it did not detect any portion of the recordings which had been manipulated or was missing. *Id.*

By way of the instant motion, Watkins now requests that the Court "correct the judicial record" and "reconsider" its September 2023 Order if it deems such relief to be "justified." (Doc. 89). Overall, Watkins appears to ask that the Court: (1) revisit its finding that no spoliation occurred with respect to Earling's interview; (2) make plain that Watkins only allegedly engaged in disorderly intoxication; (3) specify that Earling spoke to Fox as he tapped Fox on the shoulder; and (4) rectify the Court's erroneous determination that certain video footage was not missing. *Id.*

II.

A district court's reconsideration of a prior order has long been viewed as an "extraordinary remedy" to be used "sparingly." *Taylor Woodrow Constr. Corp. v. Sarasota/Manatee Airport Auth.*, 814 F. Supp. 1072, 1072–73 (M.D. Fla. 1993); *see also Saadi v. Maroun*, 2022 WL 1738002, at *1 (M.D. Fla. Mar. 15, 2022) (same) (citing *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994)). Whether considered under Federal Rules of Civil Procedure 54(b), 59(b), or 60(b), motions for reconsideration "are generally all evaluated under the same standard." *Hayden v. Urvan*, 2022 WL 18956204, at *3 (S.D. Fla. Dec. 13, 2022) (internal quotation marks and citation omitted). To secure such relief, a party must establish that (1) there has been "an intervening change in controlling law;" (2) there is newly

5

discovered evidence; or (3) there is a "need to correct clear error or prevent manifest injustice." *Sussman*, 153 F.R.D. at 694 (citation omitted); *see also Doe v. Rollins College*, 2020 WL 8408453, at *1 (M.D. Fla. July 13, 2020) (same) (citing *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002)).

As these limited grounds reflect, motions for reconsideration are not to be employed as a mechanism for propounding "new theories of law" or "reiterat[ing] arguments previously made." *Henns v. Mony Life Ins. Co. of Am.*, 2012 WL 13098756, at *1 (M.D. Fla. Mar. 12, 2012) (citing *Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997)). To permit otherwise—as one court has recognized—"would 'essentially afford[ ] a litigant two bites at the apple.'" *Overcash v. Shelnutt*, 2017 WL 4278497, at *1 (M.D. Fla. Aug. 8, 2017) (quoting *Am. Home Assurance Co. v. Gleen Estess & Assocs., Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985)).

In the end, a party seeking reconsideration bears the burden of showing that she is entitled to such exceptional relief. *Taylor Woodrow Constr.*, 814 F. Supp. at 1073. Whether a party has met her burden is committed to a district court's sound discretion and will not be overturned on appeal absent an abuse of that discretion. *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993); *Saadi*, 2022 WL 1738002, at *1 (citing *Alcock*, 993 F.2d at 806).

Watkins has not satisfied her burden here. To begin, she fails to reference the appropriate standard governing reconsideration motions or to cite any legal authority for that matter. Nor does she argue, much less demonstrate, that there has been an

intervening change in the law, newly discovered evidence, or the presence of clear error or manifest injustice. Rather, she merely disputes the Court's characterization of certain facts or arguments which are largely inconsequential to her spoliation claim and re-hashes assertions she previously raised. These threshold deficiencies alone are fatal to her motion. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."), *overruled on other grounds in part by United States v. Durham*, 795 F.3d 1329, 1330 (11th Cir. 2015); *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1286 n.3 (11th Cir. 2003) (finding an issue to be abandoned where no argument was made).

Even putting aside these infirmities, Watkins's motion fails in any event. Watkins's first contention—as alluded to above—seems to be that because "Smith did not interview key deputy witness Earling during the deputy misconduct investigation in 2019[,] . . . any such testimony [from Earling] at this time, five years following the incidents, is diminished[ or] spoiled." (Doc. 89 at 2). Watkins also appears to argue it should be presumed that an investigatory interview of Earling was actually performed despite Smith's attestations to the contrary at the evidentiary hearing. *Id*.

In its September 2023 Order, the Court credited Smith's testimony at the hearing that she did not interview Earling during the Internal Affairs investigation and that there was thus no recording of any such interview. (Doc. 85 at 13). Watkins offered no meaningful evidence to counter this testimony even though—according to Fox—she was afforded the opportunity to engage in discovery on the matter, including by deposing Earling, but did not do so. *Id.* at 4. The Court also found in its decision

7

that there were no grounds on which to deem Fox liable for any spoliation relative to Earling based upon Smith's decision not to formally speak with him. *See id.* at 8 n.6 ("To the extent Watkins suggests that Smith should have interviewed Earling, she fails to demonstrate how this argument bolsters her spoliation claims."). Watkins does not present any credible basis for the Court to reconsider these findings. *Sussman*, 153 F.R.D. at 694.

Watkins's second argument is that the Court should revise the sentence in the background section of its September 2023 Order where it states that Earling "tapped Fox on the shoulder during [his] encounter [with Watkins] but that Fox nonetheless 'continued with [his] attack' on Watkins." (Doc. 85 at 2) (citing Doc. 21 at 4, 19; Doc. 37 at 2). Watkins submits that this sentence should be corrected to read that Earling "tap[ped Fox] on the shoulder *and [spoke] into his ear*." (Doc. 89 at 2–3) (emphasis added).

This contention is wholly lacking. Watkins does not explain what relevance the additional fact of Earling speaking to Fox has to her spoliation motion, let alone how it amounts to "clear error" or "manifest injustice." *Sussman*, 153 F.R.D. at 694. Moreover, the Court based its description of this occurrence in part on Watkins's operative complaint, in which she avers three times that Earling tapped Fox on the shoulder without mentioning that Earling spoke to Fox. *See, e.g.*, (Doc. 21 at 4) ("Male deputy 'C' approached . . . Fox tapping him on the shoulder."); *id.* at 12, 19. In short, Watkins's proposed revision to the Court's September 2023 Order does not provide a proper ground for reconsideration. *Sussman*, 153 F.R.D. at 694.

8

Watkins similarly asks that the Court alter the reference in its September 2023 Order to her arrest for disorderly intoxication by adding the word "alleged." (Doc. 89 at 2). Watkins posits that this change is necessary because she "continues to assert that she was not intoxicated [or] drinking." *Id.*

This contention is likewise devoid of merit. The Court did not make any determinations regarding the circumstances that led to Watkins's arrest. (Doc. 85 at 1–2). And despite Watkins's apparent objection to her detainment, it appears she was in fact arrested for disorderly intoxication. *See* (Doc. 66-3 at 12). Again, Watkins fails to show how this proposed clarification constitutes a sufficient predicate for reconsideration. *Sussman*, 153 F.R.D. at 694.

Watkins's last two arguments relate to her claim that certain video footage is missing. Watkins first requests that the Court modify a statement in its September 2023 Order that "[o]ne camera positioned inside the cell captured the entire duration of Watkins's detainment (Camera 4059), while two others depict[ed] what occurred in the hallway outside the cell (Cameras 4044, 4058)." (Doc. 85 at 8). Watkins appears to ask that this sentence should instead state that "[o]ne camera inside the cell captured *most* of the duration of [her] detainment." (Doc. 89 at 3) (emphasis added). Although the basis for Watkins's assertion is unclear, it seems to pertain to her allegation that twenty seconds of a recording showing an unnamed sergeant entering her cell was not included in the video production. (Doc. 89 at 3).

This claim is unavailing as well. Watkins had an opportunity at the evidentiary hearing to introduce evidence relative to the purportedly omitted footage but elected

9

not to do so.  Nonetheless, the Court reviewed all the videos in detail and did not discern that any portion had been altered, deleted, or manipulated.  *See* (Doc. 85 at 12, 14).  The Court has again reviewed Watkins's arguments, as well as the pertinent recordings, and finds no basis for reconsidering the challenged language in its September 2023 Order.

Watkins relatedly seeks a correction of the sentence in the Court's September 2023 Order referring to "Watkins's claim that the video produced from inside the holding cell omits a twenty-second segment depicting an unnamed officer injuring her." (Doc. 85 at 14).  Watkins seems to maintain that the Court should have described this footage as "omit[ting] a twenty-second segment depicting an unnamed . . . sergeant [or] deputy refusing [Watkins] medical attention." (Doc. 89 at 3).

This claim is unsupported.  To start, Watkins did not raise it in her motion (Doc. 53) and only alluded to it in passing during her cross-examination of Smith at the evidentiary hearing.  Despite the lack of detail surrounding this belated argument, the Court addressed it in its September 2023 Order in an attempt to fully resolve Watkins's contentions.

Regardless, Watkins's apparent attempt to alter the contours of her spoliation challenge at this late stage does not meet the high bar for reconsideration.  Whether Watkins insists that the allegedly missing segment evidences a deputy refusing her medical attention as opposed to injuring her is inapposite given Watkins's overall failure to establish spoliation.

10

In sum, Watkins has not met her burden of demonstrating that the extraordinary remedy of reconsideration is warranted. *Taylor Woodrow Constr.*, 814 F. Supp. at 1072–73. As the Court concluded in its September 2023 Order:

> [B]ecause Fox did not have possession, custody, or control over the challenged video footage, he cannot be sanctioned if it was not preserved. Watkins's failure to satisfy this element is fatal to her sanctions motion.
>
> Even if Watkins could meet all four of the threshold elements under Rule 37, she would still have to establish either prejudice or that Fox acted with an intent to deprive. She does neither.

(Doc. 85 at 15) (citations omitted). Nothing Watkins presents in her motion suggests that the Court should reconsider these or any other findings.

### III.

In light of all the above, it is hereby ORDERED that Watkins's *Amended [ ] Nunc Pro Tunc Request* (Doc. 89) is denied.

SO ORDERED in Tampa, Florida, this 24th day of January 2023.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record
Pro se Plaintiff